Filed 1/10/22  P. v. Imber CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093659 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE018232) |
| v. | |
| JOSHUA ALAN IMBER, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Joshua Alan Imber filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  After examining the record, we conclude that the main jail booking and classification fees imposed at sentencing are no longer enforceable in light of recent legislative amendments.  We shall vacate the main jail booking and classification fees, order certain corrections to clerical errors in the abstract of judgment, and otherwise affirm the judgment as modified.

1

# I. BACKGROUND

In 2018, defendant was charged with the murder of Charles Dynes (Pen. Code, § 187, subd. (a)—count one),[1] and with being a felon in possession of a firearm (§ 29800, subd. (a)(1)—count two).  Several firearm enhancements for personally and intentionally using and discharging a firearm proximately causing great bodily injury and death were attached to count one (§§ 12022.5, subd. (a), 12022.53, subds. (b), (c) &(d)), and it was further alleged that defendant had a prior serious felony conviction (§ 667, subd. (a)), which was also a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12).  Prior to trial, defendant pled guilty to count two and the remaining charges were tried to a jury.  The following evidence was adduced at trial.

On the evening of September 27, 2017, Mary Slocum was having dinner at a restaurant with her son when she received a text message from defendant apologizing and stating that it was not her fault for what was about to happen.  Slocum and defendant had previously had a romantic relationship, but they were broken up at the time of defendant's text message and Slocum was dating and living with Charles Dynes.  Slocum believed defendant's text message meant he might commit suicide.

Slocum tried to contact defendant several times without success.  He eventually answered her call, telling her that he felt he had nothing to live for and that he wanted to go over and shoot and kill " 'him,' " which Slocum understood to mean Dynes.  She told defendant not to because Dynes was her oldest friend.  After speaking for several minutes, Slocum agreed to call defendant back in about an hour.

A short time later, Slocum's son received a telephone call from a neighbor who lived nearby asking if they were okay because the friend had heard gunshots coming from the direction of Slocum's house.  Slocum called Dynes to check on him, but received no

---

[1]  Further undesignated statutory references are to the Penal Code.

answer. While trying to contact Dynes, another neighbor called Slocum and told her someone had been shot in Slocum's driveway;[2] Slocum heard Dynes screaming in the background. Dynes had been shot multiple times, including in the head, and later died from his injuries at the hospital. Police recovered seven shell casings from the driveway area where Dynes was shot.

Defendant called Slocum later that night and told her that he shot Dynes because he was crazy and wanted her to feel what it felt like to have "[her] heart ripped out of [her] chest." Defendant also called his boss and told him he would not be in to work the following day because he had shot a man seven times and killed him. Defendant's boss reported the call to police. At trial, his boss did not remember defendant saying he shot the man in self-defense.

Police tracked defendant's cell phone and eventually located him near Corning. After leading officers on a high-speed chase, law enforcement used tack strips to disable defendant's vehicle and arrested him without further incident. Police located a Beretta semi-automatic .22-caliber handgun in defendant's car. Subsequent analysis showed that the shell casings found at the scene were fired from the gun found in defendant's car.

During the pursuit, defendant called 911 and said he was suicidal and wanted to make a phone call before pulling over; he did not want the police to shoot him. A recording of the call was played for the jury.

Defendant testified on his own behalf. According to him, he intended to commit suicide the day he shot Dynes. He denied telling Slocum that he wanted to kill Dynes, and said he only wanted to kill himself. After speaking with Slocum, he decided to kill himself at her house. As he walked towards her gate, Dynes appeared and grabbed his shirt, asking him what he was doing there. Defendant responded that he was looking for

---

[2] The neighbor called police and a recording of her 911 call was played for the jury.

3

Slocum. Defendant backed up, but Dynes would not let go and threatened to kill him. Defendant was frightened so he pulled a gun from his pocket and shot Dynes in the leg. Dynes let go, but then grabbed him again so defendant shot him several more times. Dynes fell to the ground after defendant shot him in the head, and then defendant panicked and fled. He unsuccessfully tried to shoot himself. Defendant testified that he told his boss that he killed someone after he was attacked.

The jury found defendant guilty as charged and found the attached firearm enhancements true. Defendant subsequently admitted the prior serious felony conviction. On February 19, 2021, the court struck the prior serious felony enhancement and the strike conviction, and sentenced defendant to a three-year upper term for the felon in possession offense and a consecutive 25 years to life for the murder conviction, plus an additional consecutive term of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)). The court imposed a $5,000 restitution fine (§ 1202.4), a $5,000 parole revocation restitution fine, which was suspended unless parole was revoked (§ 1202.45), a $453.62 main jail booking fee (Gov. Code, § 29550.2), a $90.65 main jail classification fee (Gov. Code, § 29550.2), a $60 court facilities assessment (Gov. Code, § 70373), and an $80 court operations assessment (§ 1465.8). The court awarded defendant 1,206 days of actual credit. Defendant timely appealed.

## II. DISCUSSION

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief setting forth the facts of the case and requesting that this court review the record to determine whether there are any arguable issues on appeal. (*People v. Wende, supra*, 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days elapsed, and we received no communication from defendant.

Having examined the record, we conclude that the $453.62 main jail booking fee and the $90.65 main jail classification fee imposed when defendant was sentenced in

4

February 2021 are no longer valid given the Legislature's recent passage of Assembly Bill No. 1869 (Stats. 2020, ch. 92, §§ 11, 25), which went into effect July 1, 2021. Among other things, Assembly Bill No. 1869 repealed Government Code section 29550.2, which authorized the main jail booking and classification fees. (See former Gov. Code, § 29500.2.) It also enacted Government Code section 6111, which provides: "On or after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to [Government Code] Section 27712, subdivision (c) or (f) of [Government Code] Section 29550, and [Government Code] Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a).) We shall therefore vacate the main jail booking and classification fees.

We have also discovered two clerical errors in the abstract of judgment. The indeterminate abstract of judgment shows that defendant received a 25-year-to-life sentence on count two, but defendant received the life sentence on the murder charge, which was count one. We shall direct the clerk to amend the abstract accordingly.

The trial court also awarded defendant 1,206 days of custody credit at sentencing. The abstract of judgment, however, lists 1,241 days of actual credit. We shall direct the clerk to amend the abstract of judgment to reflect the court's oral pronouncement of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186 [where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls].)

We find no other arguable error that would result in a disposition more favorable to defendant.

### III. DISPOSITION

The main jail booking fee and the main jail classification fee imposed pursuant to former Government Code section 29550.2 are vacated, and the judgment as modified is affirmed. The clerk is directed to prepare an amended abstract of judgment that deletes

5

the main jail booking and classification fees, reflects that defendant received a 25-year-to-life sentence on count one, and that the trial court awarded defendant 1,206 days of actual credit. The clerk shall forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

/S/

RENNER, J.

We concur:

/S/

ROBIE, Acting P. J.

/S/

MAURO, J.

6